Our third case for today is United States v. Paul Huskisson, Mr. Wilcox. Thank you, Judge Wood, and may it please the Court. The District Court's decision admitting the evidence found in Huskisson's home, that is, business, was inconsistent with the Fourth Amendment and the exclusionary rule. The agents in this case formed a deliberate plan to enter Huskisson's home uninvited and without a warrant and without any exigent circumstances. It is hard to imagine a more clear-cut violation of the Fourth Amendment or conduct more deserving of exclusion. The agents' actions in entering Huskisson's home and exploiting their presence once inside are sufficiently culpable and deliberate to justify suppression. The warrant is not a truly independent source for the evidence the agents discovered, and the government's own arguments demonstrate that nothing less than exclusion will cause law enforcement to change its behavior. What is it about the agents' conduct here that you are relying on to negate the independent source doctrine? Well, I don't think I'm negating the independent source doctrine here, Your Honor. What I think is the independent source doctrine, like the other aspects of the exclusionary rule, takes into account the culpable and deliberate nature of the officers' actions. And what are you relying on for that? What case has said, in looking at the independent source doctrine, not other doctrines under the Fourth Amendment, but that particular doctrine, what are you relying on for your argument that the agents' underlying conduct matters? Well, I think the Eighth Circuit's decision in Madrid says it matters directly for the independent source doctrine. And then while I know that these cases aren't directly about the independent source exception, the Supreme Court's decision in Davis talks about what really matters under the exclusionary rule. But those go to different exceptions. Those go to the attenuation or separate exceptions. Are there any other cases other than the Eighth Circuit's Madrid case that suggest that the agents' conduct has any impact on the analysis for the independent source doctrine? Let me ask you, maybe just to steer you in the direction of Segura, because obviously if that's a Supreme Court pronouncement on this whole situation that we need to pay attention to, the facts in Segura involve a valid search warrant issued, the Court says, this is language in part of the Court's opinion that commanded a majority, issued wholly on information known to the officers before the entry into the apartment. So it says that at one point, and then in another part of the opinion, once again, a part joined by a majority, the agents observed these various things, the triple beam scale, jars of lactose. None of these items was disturbed by the agents. And so my question is, is this just factual description, or are you relying on the fact that the affidavit supporting the warrant here was issued in part on information gleaned after the entry into the house, because they're talking about the field testing of the methamphetamine, and are you relying on the fact that the items seized were in fact disturbed by the agents? So that's agent behavior, and those are factual differences between this case and Segura. So I agree, those are factual differences between this case and Segura. We are relying on those, Your Honor. And I do think that Segura also says that it was important in that case that the agents didn't exploit their presence in the home, which is different from what happened here because of the field testing and the decision to include the drugs in the warrant application, and also the request for consent, which didn't occur in Segura. And I think that those are all important distinctions, and so the Supreme Court wasn't trying to say that there was— But there wasn't a request for consent in Murray. Was there? There also wasn't an illegal entry followed by an immediate arrest of the suspect, and then as soon as they're arrested, based on the illegal entry, asking for consent, which this Court has said would be unconstitutional in cases like Robeles or Ortega, and so it would be an odd rule that says, well, if they had asked for consent and gotten it, the evidence would definitely be excluded. But here, because Mr. Huskisson refused consent, we're now going to let the evidence in without even considering the deliberate nature of the police misconduct that occurred here. How do you differentiate Etchkin, then, from this Court, where they asked for consent and they were told not to come in, but they went in anyway? Well, so they asked for consent at the doorstep before they went in, but I think the more important distinction for Etchkin in this case is what happened after they got inside, which is that the agents didn't field test the drugs once they got inside, and they didn't mention the drugs in the warrant. So I guess that's what I'm trying to pin down to. What is the flagrant agent conduct that you refer to in your brief? Is it some combination? Is it just the field testing after they got in? What is that flagrant conduct? I think the flagrant conduct here is, number one, the plan hours in advance to enter the home without a warrant, uninvited, without consent, and number two, coupling that with the decision to field test the drugs and to then include the results of that field test in the warrant application. I'm sorry. Go ahead. I was just going to say, and then we'll turn to judgment. So if what you're really focusing on, because in all of these cases, the initial entry was illegal. Everybody says, yeah, the initial entry is illegal. And what we're trying to do is make sure, as Murray puts it, that we aren't putting the police in any worse position than they would have been if the initial entry had been fine. And so there's that kind of practical balancing there. But in each of the other cases, one can be absolutely confident that there was no exploitation of the original illegal entry. And in that respect, this case is different. That's in all of the other cases. You know, the Court of Appeals in Murray had said, we can be absolutely certain that the warrantless entry in no way contributed in the slightest. And actually, the court remands on that point. The court says, we're not so sure that that's true. So we need to find that fact. Etchen, the same. Segura, the same. So that leads me to the next question, though. The district judge is aware of this. And she says, well, I'm just going to do what you would do in a Franks hearing. I'm going to exclude from the warrant affidavit any mention of the improper information and ask whether that supports the warrant. Because if it does, then you can get the agents in the house on the warrant. They see everything, and there we are. So I agree that's what the district court said and what it did. Number one, I don't think that the district court got that analysis right. But even if you disagree with me on that, I think that what this court was getting at in Etchen itself, when it made a big point about the fact that the agents didn't observe, that the agents, although they observed drugs, didn't include it in the warrant, was that it was trying to get at this notion of exploitation. And that when they really try and exploit it, you have something special and different, and that you need to take that into account for the reasons that the Eighth Circuit also articulated in Madrid, which is that if you don't take the flagrant nature of the police misconduct into account, then essentially what you're doing is you're giving the police the license to violate the Fourth Amendment, the second that they have probable cause to enter a home with drugs. And this court in Collins has already said that that is not OK, that the police need to have either a warrant, exigent circumstances, or consent to come inside. The fact that they believe drugs might be inside is not enough. When you said that district court didn't get the Franks analysis right, are you arguing that she should not have applied a Franks analysis, or are you arguing that her determination that there was probable cause, even taking that information out, is inaccurate? It's the latter, Your Honor. I mean, while I may have qualms about applying the Franks analysis, I think it's clear under this court's precedent that that's what the district court was supposed to do. What about the fact that your client actually conceded the probable cause analysis below and was not disputing that there was probable cause to go into the house without the field tests? So two responses to that, Your Honor. Number one, the government said at the trial, at A193, that my client didn't waive that by saying my client preserved all suppression issues that were raised either by Mr. Tompkins, who was his counsel who made the comment that you're referring to, or by Mr. Huskison himself. And Mr. Huskison raised this himself in a brief at R135 at page 12. That's a very broad statement, though. Are you saying that preserved any possible suppression issue? I took that as preserving really what your main argument is here, that this is a violation in the independent source doctrine should not apply in the first instance. It's not the probable cause determination. The government said preserve all of the issues that were raised, but I don't think that I need to win this probable cause issue for Mr. Huskison to prevail in this appeal. I think that the deliberate and flagrant nature of the police misconduct is enough, and I also think the fact that based on the testimony of Detective Kinney, the decision to seek a warrant was affected by what the officers observed inside are both independent reasons separate and apart from probable cause that my client wins in this case. The district court rejected that based on the testimony that came out at trial. Well, the district court didn't reject that based on the testimony that came at trial because when it came to trial, rather than engaging in the independent source analysis, the district court instead at A270 said, well, the officers had probable cause to enter the home. I think that's a good reason to go into a home, so there was no Fourth Amendment violation in the first place. So when it got to the time of the trial, the government and the district court weren't balancing this testimony. But you're just saying that's a legal mistake. We need more than just probable cause to enter a home. It probably does have an effect on what the later warrant is, but everybody agreed throughout that the initial entry was illegal until that moment, perhaps. Well, I don't think that everyone agreed the illegal entry was legal. I mean, if you look at the government's brief below and what they were arguing to the district court, you can see that A18, they were arguing that entering the home is perfectly fine in these circumstances. So why do we have cases like Santana from the U.S. Supreme Court that worry a lot about whether you're on the porch or whether you've moved through the screen door or what have you that talk about how important it is to have, as you said, either a warrant, consent, or exigent circumstances. You hear the sounds of flushing or you hear people screaming or you hear something that makes the police think we have to go in right now. And those are all well recognized. So I agree with you entirely, Judge Wood. And I think that was the problem here was both the government and the district court, for whatever reason, thought there was an additional exception, which is when you're going to secure the scene to get a warrant, you're also allowed to enter the home even though you can't meet any of those requirements. I think that this court's decision in Etchen, I think the Supreme Court's decision in Murray, and I think all the cases you listed show that's not correct and not the law. But I think that also shows why suppression is necessary here. What's happening is that the courts are reading Segura, or sorry, not the courts, police and prosecutors are reading Segura, they're reading Etchen, and they're skipping over the part that says there's a constitutional violation here and they're just seeing that the evidence is coming in. And then they're deciding that must mean the court approved of the warrantless intrusions. And you can look at the government's brief in this case at pages 40 and 41 where the government says that what the agents did here was lawful investigative procedures that did nearly everything by the book. The only minor mistake that the government claims the agents committed was putting the drugs in the affidavit itself. They don't think there was even a problem with the police coming through the door. So just identifying... Well, all of these cases, Segura and Murray both presume, in fact the whole independent source doctrine presumes the prior illegal entry. You wouldn't care about it if it were a legal entry because then you'd have the plain view doctrine, you'd have all sorts of other things. So I agree entirely, Judge Wood. I think the problem is that that's not the message that the government is getting from the cases because the cases are not excluding the evidence, and that's why we need to exclude the evidence here. If the court has no further questions, I'll reserve the balance of my time. Okay, that's certainly fine. Mr. Wood. Your Honor, may it please the court, Bob Wood on behalf of the government. I would start, I suppose, by talking about the last point, which is obviously the entry was illegal. That is, the entire notion of the independent source doctrine, the whole government's brief is predicated on that. So you're withdrawing. You did have, I think it was the first line in your brief, that says this case involves a permissible entry into the home. That was meant as a way of... I was trying to find a way of saying non-sanctionable without being cumbersome. I meant it only in the evidentiary sense. So you agree that the initial entry into the home was illegal. I do, and I would only add, I agree with that wholeheartedly, and this is not an exception to that. I would only add that in defense of the officer's understanding of the law, this court in Alexander said, and I quote, officers entered to secure premises, this is not an exigency case, to prevent destruction of evidence while they sought to obtain a search warrant. This they could do lawfully provided they had probable cause. That's a Segura statement it's following, an analysis of Segura, and it's a similar case which involved request for consent. It's cited a couple of times in the government's brief. It's not the perfect case for... No, because it suggests they were worried about destruction of evidence, which we all know is a recognized exception. Sure, but that's also how Segura talks about it to some degree. But Segura was not a case involving exigent circumstances. Nor is Alexander an exigent circumstances case, nor is this an exigent circumstances case. And in Segura, Chief Justice Berger says, we have no reason to question the court's holding that the warrantless entry was illegal, but then he says the illegality of the initial entry has no bearing on the second question, which is whether the taint went on, and that's what we're trying to talk about. And what worries me about this case, and especially in light of the court's decision in Murray to send the case back to the district court, is there's so much information in this warrant that had no business being there about it being methamphetamine, about the field test. This is a step beyond Segura and Murray. Your Honor, I would say two things about that. First, as explained pretty precisely in the government's facts, there's one sentence of unobserved fact. Yeah, but it's a dynamite sentence. It is. I mean, it's really. But it changes the calculus, if at all, from probable cause to near certainty, and that is where the decision point is here. But can you really say that a magistrate judge being asked, thinking that maybe they knew this legitimately, are you going to authorize a search warrant for something where it's already been field tested and you know for a fact that law enforcement knows that it is methamphetamine? I mean, if law enforcement knew it was methamphetamine because they had put a tracking device in the package and then the package winds up in the kitchen of the house, then that's a different situation. You would be able to put in your affidavit, we know this is the same package, we tested the package before we put the tracking device on it, and so on and so forth. So you could have a legitimate way of knowing that, but this doesn't happen to be one. I agree, and I would just say two things. One is that there is a gap left by Segura and Murray for a case such as this. At the same time, all the other circuit-level cases, including this Court's decision, at least in Alexander, but all the cases the government cited in its brief, involve what is being referred to here and what I genuinely hope never happens again, at least in my district or anywhere, as exploitation. And that is all those cases involved entering illegally, seeing things that the individuals who lived in the house either did or didn't have reasonable expectation of privacy in. There's no reasonable expectation of privacy in the methamphetamine, which I think is one distinction between this and Madrid, where we're talking about notebooks and things that are very personal and private. But in all of the cases, the government canvassed all the cases it could find and included even cases involving sanctions. Evidence observed after an illegal entry was included. In almost all of those cases, that evidence was more substantial than the evidence here by quantity, at the very least. I understand that Your Honor's rebuttal might be, what's more substantial than a field test? At the same time... Yeah, I mean, seriously. Well, first of all, there's 10 packages. There's not a small quantity. But it's the field testing and it's being confident. The whole pattern that I see in these independent source cases is the police come in, they shouldn't have done it. But meanwhile, back at the farm, some other police officer, untainted by this illegal entry, has properly gone to a magistrate, a state court judge, an authorized official. Laid out the case for probable cause. The issuing officer looks at this and says, yep, probable cause, issues the warrant. And the police then, having only, meanwhile, Team A has just done nothing but secure, go in and search. That's what the Supreme Court's worried about. We don't want to say that the police have done anything wrong in that situation because the untainted channel is working the way it should. The untainted channel did not work the way it should here. Well, the officer in charge, the agent in charge, left before. . . He said, wait, don't search. Those are not the words used by an officer who's expecting to hear additional details. Granted, he did hear additional details. He included them in the warrant. And he includes them in the warrant. Yes. What does he do that for? One detail, really, that was above and beyond. But then I'm saying, you know, it's the skunk and the jury. It's the giant detail. It's not just, you know, and he was wearing a red shirt. You know, it was. . . But you can't tie that back. If we're looking at flagrancy of conduct, I think that the defendant is trying to tie that all the way back to the original plan. And that is not appropriate under Agent Klein, Agent Holbrook, and Agent Arona's view. The deliberateness here was always to secure the house. Again, I understand the way that the court wants not to encourage officers to do this. But to secure the house in service of getting a warrant. If we uphold this, then every officer in Indiana is going to do this. Well, it will only be. . . If you do not uphold it, it will create a circuit split. And that is. . . It is a strange rule under the Fourth Amendment. I have to say, when I picked the case up, my heart went, like, down in my stomach. I thought. . . I've done many Fourth Amendment cases, and I thought, now what happened here? And I had never heard of Segura. And I had to read Segura several times before understanding. . . There's even a portion of Segura where the court goes out of its way to say that there is no distinction between a perimeter stakeout and going inside. I have no idea why the court felt it necessary to say that. There are practical issues, I suppose, with that. In that perimeter stakeouts, at least in a case like this one, where you have a drug transaction occurring, might manufacture an exigency if you're spotted while staking the perimeter. But I don't know precisely why, other than Nix v. Williams, this is the rule. Does the flagrancy of the law enforcement conduct ever matter in assessing an independence or a statute? I think it should always be an outside consideration. The government's position has never been, in this case, that Madrid is a bad rule, is a bad way of treating these cases. The government's position, which I understand Your Honor may disagree with, is on these facts, unlike the ransacking that occurred in Madrid, which if you look at the facts, they are demonstrably worse. On these facts, it would be unfair to call the officer's conduct flagrant, in particular in light of... Well, you're relying very much, I will say, on some credibility decisions that the district court made, because at issue was what was the nature of the advance plan, and you have a couple of different accounts of that. If the advance plan had been, let's just structure it this way, that might be different. There's some debate about whether they were going to go for a warrant whether or not drugs were found, or whether they were just going to go for a warrant once they knew drugs were inside the house. I agree. That could be significant. On that point, Detective Kinney, did he have any authority over the investigation? No, and that's where... Was he present at the investigation? He was present at the investigation, and I would just say a couple of things. There is genuine debate when you have agents testifying in a different manner. Fully grant that. But the agent in charge and two other agents testified that the plan was very different than the way Detective Kinney did. Separate from that, if all that we had here... Of course, you have to look at the whole record on clear air. But if all we had here was Detective Kinney's statements, this would be an extremely close call because you have the way he testified, the suppression hearing, which... I made light of it a little bit in the brief by saying it raises eyebrows. It's extremely problematic. But on the other hand, you have his complaint affidavit in this case, which the judge had, in which he says the purpose of entering was always to secure. He sets no other purpose other than to secure the residence, which, again, is a strange aspect of Segura. So we're going to violate the Fourth Amendment by... Because Segura does not sanction the initial entry. Agreed. Segura is very careful to focus on the later activity. Even though Alexander, this court's statement on Alexander, does... I think it is not the best reading of Segura. For credibility's purposes, I will say that. But it does say that... It does read Segura as permitting an entry like the one here as lawful. It says that it's lawful. If we affirm, how do we stop officers from thinking it's okay to do this? Sure, well... Because, as we've all agreed, the entry into the home is illegal. It's just what are the consequences from that? And we certainly don't want to send the message that it's okay to illegally enter homes. The evidence won't get thrown out. I totally agree. I would say, as long as I'm in the position I'm in in my office, I will work very hard to make sure that... We're going to have a training on it, actually, pretty soon, that AUSAs... Unlike in Segura, where the AUSA advised the officers to do this, I think there was some coordination. It's not in the record. I'm not sure. Between our AUSA here and the officers as to how to devise the plan. That's never going to happen in our office again. There are, of course, private suits, as Blackwell, I believe, is the decision that discussed that as... I mean, numerous cases discuss it, but as a separate remedy. Beyond that, I've been trying to think of the best way to do it because I'm afraid of generating a rule where the officers could manufacture an exigency. But I don't know. Other than to say my takeaway from all of these cases is that this is the most difficult balance that I've come across to strike in terms of crafting a rule that sends the message that Segura was excusing isolated behavior. Again, there are fewer than a dozen cases on this around the country since 2000, I think, 1997, maybe, when I started my... There may be more, but the ones that seemed pertinent to this case because of inclusions of post-entry observations, there may be many more, but I didn't find them. So it doesn't seem to be a mounting great problem, but at the same time, every time it happens, it's a violation of the Fourth Amendment. I think that some clarification of Alexander might be the clearest way to go about it to say, in Etchin, we tried to send this message. In Alexander, which was a year before, there is a conflicting statement of the law. I think Alexander's statement of the law is what... Again, it's not in the record, but I think it prompted a lot of confusion here. Let us be clear, and I mean, I don't know. I obviously don't want exclusion in this case, and I don't think it would be appropriate, and I think it would create a circuit split. I can't think of how to split the baby. I can't think of a through way. I'm sorry, Your Honor. Beyond that, I would add this notion of premeditation and deliberateness. This case is not all that different than some other cases that are cited in the government's brief. In District Salary, the officers talked to one co-conspirator and then at that point decided, okay, we're going to now drive to the other co-conspirator's apartment for the purpose of entering, regardless of permission, to freeze it and then getting a warrant. That seems the same. To me, in Alexander, they approached the house with a dog, intending all the time to enter whether or not permission was granted, as long as the dog alerted. In Jenkins, the hotel room case, where it was assumed the entry was illegal, the stakeout plan always involved going into the hotel room as soon as probable cause developed. In Segura, they consulted with an assistant United States attorney that's certainly planning ahead. I would just say that viewing this as particularly deliberate requires reading back from the inclusion of the methamphetamine field test results more than that can hold from an evidentiary standpoint. If there are no other questions, I would just say that suppression would conflict with Nix's rule because the officers had probable cause, as has been conceded at the time Hardy gave the signal, and they could have gotten a warrant. In fact, that was what Agent Klein always said was the plan, and what he did, he left immediately to get a warrant without hearing anything from anyone, and suppression would put them in a much worse position than they would be in that alternate view. So with that, thank you. All right, thank you very much. Anything further, Mr. Wilcox? Just a few brief points in rebuttal, Your Honor. First, the government, and I take them at his word, says this won't happen again and they will do training, but we have the brief that they filed in this case saying this was a lawful investigative procedure. So I think we also need to take that into account, what message is being given to the attorneys in this case and to the prosecutors and line FBI agents in the Southern District of Indiana. And apparently the message they were getting, at least until today, was this was lawful behavior, and exclusion is the only way we're going to change that message for sure. But I also think there was a lot of discussion about creating a circuit split. The only circuit split that would be created here is if the court actually allows this evidence in, because then you'd be creating, and especially if you don't take the deliberate nature of the conduct into account, because then you'd be creating a split with the Eighth Circuit's decision in Madrid. I think if you look at all the other cases that the government talked about in its brief and its argument, there's basically three key features here that don't line up with those cases. Number one, it was the deliberate plan. And the deliberate plan doesn't just come from Detective Kinney. You can see it from the other agents as well. You can see it at A173, where it's Agent Klein testifying, and A227, where it's Agent Holbrook testifying. The deliberate plan all along was to break into this house without a warrant and to secure the scene. Now, Detective Kinney is the one who adds that it was also to discover the methamphetamine and only get a warrant if they did. But no one disagrees that there was a deliberate plan to violate the Fourth Amendment in this case. Now, the second key feature is that that was then obviously a flagrant constitutional violation. And the third one, which you hit on, Judge Wood, is that by them exploiting their presence in the home. We have the officers putting it in the warrant affidavit that they discovered the drugs and they field tested them and they tested positive for methamphetamines. You can't unring that bell. And if the exclusion rule is going to have any play at all in these type of drug investigations, it has to be sent to a message to the government that yes, when you're completely disconnected from the unlawful conduct or where it's a close call, whether the unlawful conduct would have had any effect on the magistrate, maybe the independent source doctrine will save the unlawful conduct from exclusion and you'll still have your evidence. But when you deliberately put it in the warrant affidavit, that is a bridge too far. That's the gap that the government admits is between Segura and Etchen and the outer bounds of the exclusionary rule. And my last point, Your Honor, just to emphasize again that the flagrant nature matters, is to look at the Supreme Court's decision in Davis where the Supreme Court said that when the police exhibit a deliberate disregard for the Fourth Amendment, that the benefits of exclusion tend to outweigh the costs and that exclusion is appropriate. Now, that wasn't an independent source case, but that was a general statement about the law of the exclusionary doctrine, and I think that that principle applies here. Thank you. Thank you very much. And you accepted this case by appointment? Yes, Your Honor. I understand. We appreciate very much your efforts on behalf of your client and for the court. And special thanks to the government as well. I don't know if you're being paid these days, but that's what I thought. So we appreciate the extra efforts that everyone is making to move the cause of justice along.